92 N.J. Super. 373 (1966)
223 A.2d 511
ALAN E. KLIGERMAN, GEORGE A. KLEINHANS, ROBERT E. JEFFRIES AND CLIFFORD J. HOGAN, PLAINTIFFS,
v.
JOHN A. LYNCH, PRESIDENT OF THE SENATE OF THE STATE OF NEW JERSEY:  FRANK S. FARLEY; JOHN E. HUNT; JOHN A. WADDINGTON; A. DONALD BIGLEY; FREDERICK J. SCHOLZ; EDWIN B. FORSYTHE; WILLIAM T. HIERING; RICHARD R. STOUT; SIDO L. RIDOLFI; J. EDWARD CRABIEL; JOHN A. LYNCH; WILLIAM E. OZZARD; MILDRED BARRY HUGHES; NELSON F. STAMLER; THOMAS J. HILLERY; MILTON WOOLFENDEN, JR.; NICHOLAS T. FERNICOLA; JOHN J. GIBLIN; MACLYN S. GOLDMAN; HUTCHINS F. INGE; FRANK J. GUARINI; WILLIAM F. KELLY; WILLIAM V. MUSTO; MATTHEW FELDMAN; ALFRED W. KIEFER; JEREMIAH F. O'CONNOR; NED J. PARSEKIAN; ANTHONY J. GROSSI AND JOSEPH M. KEEGAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 20, 1966.
*374 Mr. Patrick T. McGahn, Jr. for plaintiffs.
Mr. Thomas F. Connery, Jr. for defendants (Messrs. Brown, Connery, Kulp & Wille, attorneys).
WICK, J.S.C.
Plaintiffs instituted this suit to have certain actions of the New Jersey State Senate declared illegal, unconstitutional and void under Art. VI, Sec. VI (1) of the New Jersey Constitution, which places the appointing power in the Governor with the advice and consent of the Senate. Plaintiffs are residents of Atlantic County and claim that said actions are violative of their rights under Art. I, Sec. I of the New Jersey Constitution and under the 14th Amendment of the Federal Constitution.
*375 Defendants have filed a motion to dismiss the action for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.
The facts presented in plaintiffs' brief, which must be accepted as true for the purpose of the motion, establish that on June 6, 1966 the State Senate failed to confirm a judicial nomination for the Atlantic County Court; that the sole reason for rejection was for purely personal reasons, as expressed by the Senator from Atlantic County, and that because of the said Senator's objection against the said nominee, the custom of "Senatorial Courtesy" was invoked and not one of the members of the Senate voted to affirm the appointment.
Plaintiffs contend that the custom of "Senatorial Courtesy" is an improper exercise of the constitutional mandate to advise and consent to judicial appointments, and thus this court has the authority to hear and determine the present case. The court cannot agree.
Plaintiffs contend that rejection of qualified nominees for personal reasons is so arbitrary as to be incompatible with the power vested in the Senate, and that the framers of the Constitution never intended this check on the appointive power to supplant a properly exercised executive function.
While this court must agree with plaintiffs that the constitutional draftsmen never intended the advice and consent clause to be so used, it cannot agree that it has the power to rectify the situation.
The framers of the Constitution were not blind to the problem here at issue; indeed, those present at the Constitutional Convention of 1844 who opposed the transfer of the appointive power from the joint meeting of the legislative houses to the Governor and Senate relied heavily on this argument. Proceedings of the New Jersey State Constitutional Convention of 1844 (New Jersey State House Commission 1942). Mahlon Dickerson, from Morris County, pointed to the situation existing at the federal level:
*376 "Look at the state of things at Washington now, where more than half of the nominations of the President, have been either rejected or suspended. Some of the officers too, are of the greatest importance. Such as Judges of the Supreme Court. I will not say whether the President or Senate is wrong, but the system is wrong, and much mischief grows out of it." (at page 353)
William B. Ewing, of Cumberland County, who originally moved to strike the proposed change from the new Constitution, argued in a like manner:
"But suppose the Governor and Senate should be of different parties. The Governor will only nominate his own political friends and his nominations will be disregarded by the Senate and the offices will not be filled and the people will suffer great inconvenience." (at page 349)
The members of the Convention were fully apprised of the dangers inherent under both the existing system and the proposed system, yet they realized that they were powerless to correct or control the abuses. Mr. Field of Mercer County, a proponent of the new system, best stated the position of the Convention:
"The subject of the appointing power is one of the most delicate and difficult subjects which the Convention will be called upon to determine. It is surrounded on all sides with difficulties and embarrassments. Place it where you will, it is always liable to be abused * * *. But we are now called upon to do, what is frequently necessary to be done, make a choice of evils; and we all hope that we shall choose wisely and well." (at page 356)
Can it reasonably be inferred from this language that the Convention meant to invest the courts of New Jersey with power to correct these abuses when it felt powerless to do so itself? To correct these abuses would, as defendants point out in their brief, involve delving into the thought processes and motivations which led each individual senator to vote or not vote as he did.
In short, abuse of power by an elected representative which falls short of violating the Constitution, either Federal *377 or State, or some law of the land, cannot be remedied by a court of law, but only by the electorate. It is clear from the extended debate over the appointing power which took place at the Constitutional Convention of 1844 that the delegates thereto, and the eventual framers of Art. VII, Sec. II, par. 1 (under the Constitution of 1947 Art. VI, Sec. VI, par. 1, with language variations) never considered or attempted to construe the "advice and consent" clause so broadly as to encompass the present situation. The mere act of confirmation or rejection by the Senate, for whatever reason and in whatever manner, is sufficient to meet the requirements of said clause.
Plaintiffs argue that the "advice and consent" clause requires the exercise of reasonable judgment in forming an opinion. They cite In re Opinion of Justices, 190 Mass. 616, 78 N.E. 311 (Sup. Jud. Ct. 1906), to support their position. However, that case has no bearing on the present cause of action. The question before the Massachusetts court was whether, under that section of the Massachusetts Constitution which gave the Governor the power to pardon by and with the advice and consent of the Council, the Governor must initiate the action or whether the Council could move on its own.
Plaintiffs also rely on the case of Murphy v. Casey, 300 Mass. 232, 15 N.E.2d 268 (Sup. Jud. Ct. 1938), and refer particularly to page 271, where the court said that "Council in determining whether its advice and consent should be given to the removal of a public officer may adopt any reasonable method of forming a proper judgment." The statute involved set out the procedure to be followed for removal of public officers by the Governor, and required that such be done by and with the advice and consent of the Council where the appointment had been so made. However, removal could only be for cause.
Similarly, the case of United States v. Ballin, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321 (1892), cited in both briefs, fails to lend any support to plaintiffs' case. In the first place, that case dealt with an actual rule of the United States Senate, whereas this court is concerned with what might possibly *378 be termed an "unwritten rule," but more properly a custom allegedly practiced by the New Jersey State Senate, and undoubtedly by other legislative bodies throughout the land. Secondly, as established previously, there is no justiciable constitutional question involved in the present case which would support a judicial inquiry into said alleged custom, for the very act of rejection by the Senate is per se proof of an exercise of judgment which, absent the requirement of a showing of cause, is sufficient to comply with the "advice and consent" clause of our Constitution.
Since plaintiffs have failed to raise a constitutional question, they have failed to state a claim upon which relief can be granted and defendants' motion for dismissal must be granted.
Nor is this the only defect in plaintiffs' suit, for there is a serious question as to whether they have proper standing to maintain this action. They base their claim on the unalienable right of every citizen to ask that his government be properly administered, and allege that as citizens of Atlantic County they have been injured by this improper action of defendants in that it prevents them from obtaining a speedy and efficient determination of legal rights by blocking the appointment of a qualified man to the judiciary in Atlantic County.
Plaintiffs cite several New Jersey cases which uphold the right of a citizen and taxpayer "under appropriate circumstances and without any showing of increased tax burden, to maintain proceedings seeking to remedy wrongful acts of public officials." Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163 (App. Div. 1949). However, in all the cases cited by plaintiffs, and in all subsequent cases wherein the courts of New Jersey relied on these cases, the injury of first instance was to the general public, and the public would have had to bear the burden of the improper action as a direct consequence thereof.
In the present case the injury of first instance was to the rejected nominee, and only he was directly affected. The fact *379 that he was to have served a public office gave the action of the Senate a secondary effect, in that the injury carried over to the citizens of Atlantic County.
The recent case of Bond v. Floyd, 251 F. Supp. 333 (N.D. Ga. 1966), cited by defendants, is directly in point. In that case the Georgia Senate refused to seat a duly elected representative pending investigation of his qualifications. Suit was instigated by said representative and by two residents of his district. The U.S. District Court dismissed the action of the two residents on the grounds that one of them was not registered to vote in that district and that neither of them had "such a direct interest in the litigation as would give them standing to bring the complaint."
It is difficult for this court to discern any substantial distinction between that case and the case at bar insofar as the issue of standing to sue is concerned. Can it be argued that the interests of the present plaintiffs are more substantial than those of the two residents in the Bond case, or that the injury here complained of is more direct than the injury inflicted in that case? We think not.
In the cases cited by plaintiffs, the alleged illegal activities of the government were not aimed at any one in particular but were carried on at a higher level, so that the injury would fall more broadly on all citizens or could be buried in the maze of bureaucracy and go unnoticed. In such a case it is not only unreasonable but highly unrealistic for the courts to wait until the government decides to prosecute itself for its own improprieties. But where an individual citizen or group of citizens is directly injured by an alleged unconstitutional abuse of governmental power, and said individual or group does not seek redress, it is just as unreasonable for a court to entertain suits by third parties who do not have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).
The motion to dismiss the complaint will be granted for the reasons herein stated.