Barry T. PARKER, James S. Cafiero, Donald Di Francesco, John H. Dorsey, Wayne Dumont, Jr., John H. Ewing, Walter E. Foran, S. Thomas Gagliano, Garrett W. Hagedorn, Brian T. Kennedy, Lee B. Laskin, James J. Vreeland, Jr., James H. Wallwork, Members of the Senate of the State of New Jersey and Individually; and Ralph Fucetola, Clarence A. Haverly, Richard Mahon, John Rice and Barbara Tauriello, Individually, Plaintiffs,

v.

Joseph P. MERLINO, Eugene J. Bedell, John P. Caufield, Frank J. Dodd, Bernard J. Dwyer, Angelo J. Errichetti, David J. Friedland, Matthew Feldman, Frank X. Graves, John T. Gregorio, William J. Hamilton, Francis X. Herbert, Joseph Hirkala, Wynona A. Lipman, Joseph A. Maressa, William Vincent Musto, Carmen A. Orechio, Steven P. Perskie, Frank E. Rodgers, Anthony Scardino, Jr., Walter N. Sheil, John M. Skevin, Charles B. Yates and Raymond J. Zane, Members of the Senate of the State of New Jersey; and the Senate of the State of New Jersey and the State of New Jersey, Defendants.

Civ. A. No. 80–141.

United States District Court,
D. New Jersey.

June 13, 1980.

John P. Sheridan, Jr., Princeton, N. J., for plaintiffs.

Leon J. Sokol, Hackensack, N. J., for defendants.

William Harla, Deputy Atty. Gen., State of N. J., Trenton, N. J., for defendants, The Senate of the State of New Jersey and The State of New Jersey.

## OPINION

### I. *Parties and Proceedings*

DEBEVOISE, District Judge.

Thirteen of the plaintiffs are members of the Senate of the State of New Jersey. Five of the plaintiffs are New Jersey residents who reside in a legislative district represented by one of the plaintiff Senators. The twenty-four defendants are or were members of the New Jersey State Senate, and one of them, the Honorable Joseph P. Merlino, also serves as President of the New Jersey Senate.

Plaintiffs assert that P.L.1979, c. 280, a tax bill signed by Governor Byrne on January 8, 1980, was unlawfully enacted by the State Senate and that their First and Fourteenth Amendment constitutional rights were violated. The violations were occasioned by rulings of the Senate President which were sustained by the Senate majority and which prevented them from debating the bill prior to the Senate vote.

Plaintiffs filed their complaint in this Court on January 15, 1980, seeking vindication of rights protected by 42 U.S.C. § 1983 and alleging jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). Plaintiffs seek the following relief:

1. The actions of Senator Merlino and the other defendants in cutting off debate on A–3677 and in prohibiting debate on A–3678 be declared unconstitutional pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*;

2. The Rules of the Senate of the State of New Jersey be declared unconstitutional pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* to the extent that they allow the Senate to prohibit any Senator of the right to speak for or against legislation, before the Senate, for a reasonable period of time prior to it being voted upon by the Senate;

3. Senator Merlino and the other defendant Senators be enjoined from acting in a manner which will deprive any plaintiff Senator of the right to speak for or against any legislation before the Senate for a reasonable period of time prior to it being voted upon by the Senate;

4. P.L.1979, c. 280 be declared unconstitutional due to the unconstitutional manner in which it was adopted, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*;

5. Costs of suit, counsel fees and such other relief as the Court may deem just and equitable.

At a conference with the Court shortly after the complaint was filed, it appeared that it would be possible to stipulate all of the pertinent facts and that the case could be resolved on cross-motions for summary judgment. Such a stipulation was filed and plaintiffs and defendants filed motions for summary judgment. In addition, defendants filed an affidavit of the Honorable Joseph P. Merlino to the effect that twelve of the thirteen plaintiff Senators were present on January 9, 1979 when the Senate adopted by a voice vote its Rules for the Session commencing on that date. The affidavit remains undisputed.

Inasmuch as the pertinent facts have all been stipulated, there is no genuine issue as to any material fact, and the matter is ripe for disposition by way of summary judgment pursuant to *Fed.R.Civ.P.* 56.

## II. *The Facts*

On December 28, 1979 the Governor of New Jersey announced a $340,000,000.00 tax plan to make up a budget shortfall predicated by the Administration for the New Jersey budget commencing July 1, 1980. The plan contemplated several new taxes, including those set forth in Assembly Bills 3677 and 3678.

On Saturday, January 5, 1980, A–3677 was given its third reading and passed the Assembly. A–3677 was given a second reading no reference in the Senate late Saturday night, January 5, 1980.

On Saturday, January 5, 1980, A–3678 was given its third reading and passed the Assembly. A–3678 was given a second reading no reference in the Senate late Saturday night, January 5, 1980.

On Saturday, January 5, 1980, the Senate President's office issued a Board List, circulated to all members of the Senate, of bills to be voted on Monday, January 7, 1980 for a Session originally scheduled to begin at 2:00 p. m. A–3677 and A–3678 were on that Board List.

On Monday, January 7, 1980 the Senate President called the Senate Session to order at approximately 4:00 p. m. After considering 29 bills, the Senate was placed under "call" at approximately 9:00 p. m., with only A–3677 and A–3678 remaining to be voted on. The Session was recessed upon motion adopted by voice vote over the objections of certain plaintiff Senators. The Session was called to order by the Senate President at approximately 11:40 p. m., at which time he advised that A–3677 and A–3678 would be taken up at 10:00 a. m. the following morning, January 8, 1980.

The Senate Democrats held a party caucus at 10:00 a. m. The plaintiff Senators who are Senate Republicans were present and ready to proceed with the Senate Session at 10:00 a. m. The Senate President called the Session to order at approximately 11:27 a. m. (33 minutes before the constitutionally mandated end of the 1979 Senate Session). Senator Hagedorn then rose and asked the Senate President what time it was, giving rise to the inference that if the Senate Session were extended by the time-honored practice of setting back the clock, action taken after the actual hour of noon would be attacked on state constitutional grounds. The Senate President stated that the Senate clock was accurate.

After the quorum call, opening prayer and pledge of allegiance, Senator Dwyer was recognized by Senator Merlino. At that point Senator Hagedorn rose on point of personal privilege to speak concerning the unreasonable manner in which Governor Byrne's tax package, including A–3677 and A–3678, was handled by the Governor and the Legislature. Senator Merlino ruled Senator Hagedorn out of order and would not permit him to speak. Senator Hagedorn appealed this ruling, and the chair was sustained by a vote of 13–23.

At approximately 11:32 a. m., Senator Dwyer, the Democratic Assistant Majority Leader, rose to move and speak in favor of A–3677, noting that the bill would raise $90 million dollars per year by increasing the corporate tax rate from 7½% to 9% per year. He stated that this bill was part of the original tax package which was passed in 1976, and was intended to offset the loss of various business taxes which had been repealed as part of that tax package. He said that if the Senate did not adopt A–3677, the State would face a serious budget shortfall. He then moved the bill.

Senator Hagedorn spoke next in opposition to the bill. He explained that he was being deluged by telegrams and letters in opposition to the Governor's $340,000,000 tax program. Senator Hagedorn spoke for approximately five minutes and was then followed again by Senator Dwyer, who responded to Minority Leader Hagedorn.

Senator Foran next spoke and posed a question to the sponsor through the Senate President. He asked about the funds to be generated in 1979, and Senator Dwyer responded that an additional $45,000,000 (in addition to the $90,000,000) would be raised because of the overlap in the remaining six months of the current fiscal year.

Senator John Russo next rose. He indicated that the budget increases under the Byrne Administration were not as large as under the previous Cahill Administration, and that the increase in spending referred to by Senator Hagedorn was due to the income tax which represented an assumption of local costs previously paid from local property taxes.

Senator Kennedy next rose to speak and complained that as a member of the Revenue, Finance and Appropriations Committee he was not given an opportunity to review the validity of the request for a tax increase because the Committee had not met on the issue. He said that he had to rely on information provided by newspaper reports. He questioned whether there was a budget shortfall, pointing out, among other things, that passage of this tax package was premature as it was not clear that federal revenue sharing funds would not be provided, and that it was possible the State would have the use of commuter tax revenues presently being held in reserve.

At approximately 11:47 a. m., Senator Perskie was asked by Senator Merlino, "Why do you rise?" Senator Perskie replied, "I rise to move the question." His motion was seconded by Senator Dwyer.

Senator Hagedorn objected to the motion. Senator Merlino ruled the motion in order and non-debatable, citing Rule 93(d) of the Senate Rules. Rule 63 of the Senate Rules (limiting the number and length of speeches by Senators on a bill) was not discussed. Senator Hagedorn appealed the ruling to the full Senate.

Senator Parker rose on a point of personal privilege to protest the denial of the right to speak on the bill. Senator Merlino ruled him out of order. Senator Parker requested the Republican Senators to leave the floor because it was the first time debate was cut off in the Senate. Senator Dumont and Senator Wallwork also rose to speak but were not recognized by Senator Merlino, who stated the question had been called.

Senator Merlino called for a vote on the motion. It carried 23 to 4 (several Republican Senators had left the floor in protest of the Senate President's rulings.) All of the defendant Senators voted in favor of the motion.

Senator Dumont rose on a point of personal privilege, noting that in his twenty-six years in the Senate no Senator had ever been denied the right to speak on a bill. Senator Merlino ruled him out of order, saying the question had been called and must be followed by a vote on the bill.

Senator Merlino called the question and A–3677 passed 21–4. (The Senate journal now indicates that the final vote was 21–15.)

At 11:53 a. m. the Secretary called A–3678 and, following a similar but even more abbreviated procedure, A–3678 was voted on at 11:55 a. m. It was defeated.

At 12:00 Senator Dwyer moved that the Senate adjourn *sine die.* The Senate President adjourned the Senate *sine die,* thereby ending the 1978–1979 Senate Session.

Later that same day, January 8, 1980, Governor Byrne signed A–3677 into law as P.L.1979, c. 280.

The rules of the Senate in effect for the 1979 Senate Session, a copy of which was attached to the stipulation, were adopted by voice vote at the Senate Session on January 9, 1979, and they remain in effect for the current 1980 Session, with one change not here pertinent.

In essence, plaintiffs contend that the Senator plaintiffs were deprived of their First Amendment right to free speech when they were not permitted to speak on the Senate floor; that the legislative process inherent in a representative form of government is dependent upon the free flow of ideas which arise in the course of debate on the floor of the legislature, and that, therefore, the other plaintiffs have been unconstitutionally deprived of full representation by their elected officials when those officials have been prevented from speaking on pending bills.

### III. *The Law*

A. *Defenses Not Going to the Merits:*

Defendants have raised a number of defenses which do not go to the merits of the case.

First, they urge that the action is barred by the Tax Injunction Act of 1937, 28 U.S.C. § 1341, which reads:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Defendants contend that part of the relief which plaintiffs seek, a judgment declaring P.L.1979, c. 280 (a tax act) unconstitutional due to the manner in which it was adopted, would, in effect, enjoin, suspend or restrain the assessment, levy and collection of New Jersey's increased corporation business tax. This, they argue, the Court does not have

jurisdiction to do, citing *Tully v. Griffin, Inc.,* 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976); *Robinson Protective Alarm Co., etc. v. City of Philadelphia,* 581 F.2d 371 (3d Cir. 1978); *Non-Resident Taxpayers Ass'n v. Municipality of Philadelphia,* 478 F.2d 456 (3d Cir. 1973). Defendants note that suits predicated upon alleged violations of civil rights under 42 U.S.C. § 1983 of the Civil Rights Act cannot avoid the jurisdictional restraints imposed by § 1341, *Kimmey v. H. A. Berkheimer, Inc.,* 376 F.Supp. 49 (E.D.Pa.1974), aff'd 511 F.2d 1394 (3d Cir. 1975). They contend that the United States Supreme Court case of *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), establishes that § 1341 deprives district courts of jurisdiction over declaratory judgment actions as well as injunction proceedings if state tax legislation is involved.

Finally, defendants argue that the present case is not within the statutory exception set forth in § 1341 because plaintiffs have a "plain, speedy and efficient remedy" in the state courts to contest the validity of P.L.1979, c. 280, namely, the procedures provided in N.J.S.A. 1:7–1, *et seq.* Under that statute two or more citizens of the State, within one year after a law has been filed with the Secretary of State, may apply to the Superior Court, Appellate Division, to have such law declared void if not duly passed by both houses of the Legislature. Defendants argue that notwithstanding the New Jersey rule of law precluding state courts from interfering in legislative practices and proceedings, the state courts would nevertheless pass upon such practices and proceedings if constitutional rights were at stake, *Kligerman v. Lynch,* 92 N.J.Super. 373, 223 A.2d 511 (Ch.Div.1966), cert. den.; 389 U.S. 822, 88 S.Ct. 49, 19 L.Ed.2d 74 (1967).

Plaintiffs, on the other hand, assert that it has not yet been determined whether § 1341 deprives district courts of jurisdiction over actions seeking a declaratory judgment of invalidity of a tax act, contending that in *Great Lakes Dredge and Dock Co. v. Huffman, supra,* the Supreme

Court specifically declined to decide that question, 319 U.S. 293 at 299, 63 S.Ct. 1070 at 1073, 87 L.Ed. 1407. They contend that the circumstances of their case are extraordinary and exceptional, empowering the Court to accept jurisdiction.

Further, plaintiffs argue that they do not have a "plain, speedy and efficient remedy" in the state courts. They maintain it would be impossible to raise in those courts the constitutional questions which are at the heart of the present case for the reason that the state courts would not interfere with the procedures by which the Senate conducted its business. This would violate established state principles of separation of powers, *Passaic Co. Bar Ass'n v. Hughes*, 108 N.J.Super. 161, 260 A.2d 261 (Ch.Div. 1969).

In my opinion, it is unnecessary to resolve these questions at this time. The principal thrust of plaintiffs' action is a determination of the validity of Senate rules which were used to cut off debate and which remain available to cut off debate in the future. Eliminating the request to declare invalid P.L.1979, c. 280, this would not be an action to enjoin, suspend or restrain the assessment, levy or collection of a state tax. Rather, the action would be limited to plaintiffs' requests for relief from the effects of the Senate Rules limiting debate.

Defendants' reliance on the abstention doctrine is not appropriate in this case. There do not appear to be any unsettled state law issues the resolution of which is preliminary to consideration of the pending federal constitutional question, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Defendants assert that this matter is not a case or controversy within the meaning of Article III, Section 2 of the United States Constitution and thus is outside the jurisdiction of the Courts of the United States. The test is whether a plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination, *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It is

clear to me that the present case does present a real question of conflicting legal interests. Plaintiffs assert that the application of existing Senate rules have deprived them in the past and threaten in the future to deprive them of an important constitutional right, namely, the right to conduct a debate upon pending legislation before a vote. Plaintiffs seek in this action to terminate these practices which limit debate. This is a case or controversy in which both classes of plaintiffs have an interest and is properly before the Court within the principles set forth in *Young Women's Christian of Princeton, New Jersey v. Kugler*, 342 F.Supp. 1048 (D.N.J.1972), *vacated and remanded*, 475 F.2d 1398 (3d Cir. 1973), *aff'd*, 493 F.2d 1402 (1974), *cert. den.* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 885 (1974).

Defendants advance three grounds to support their argument that plaintiffs' claims are not justiciable: (i) the issue before the Court involves a political question and thus is not susceptible to judicial review; (ii) the doctrine of separation of powers precludes a court from interfering with the internal workings of the Legislature; and (iii) members of a state legislature enjoy immunity from suit brought under 42 U.S.C. § 1983 to the extent the activities complained of were within the sphere of their legislative activity.

To support its separation of powers argument defendants rely to a great extent upon federal court cases which hold that federal courts normally will refrain from adjudicating disputes grounded upon internal procedures of Congress and upon state court cases which hold that state courts normally will refrain from adjudicating disputes grounded upon internal procedures of the state legislature, *e. g., United States v. Ballin*, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321 (1892); *Brown v. Heymann*, 62 N.J. 1, 297 A.2d 572 (1972); *Reingold v. Harper*, 6 N.J. 182, 78 A.2d 54 (1951).

Neither of those situations is now before the Court. Here, a federal court is being asked to review the allegedly unconstitutional effect of the internal operating procedures of a state legislature.

Defendants' political question argument, their separation of powers argument, and their legislative immunity argument were addressed and disposed of by Judge Brotman in *Gewertz v. Jackman*, 467 F.Supp. 1047 (D.N.J.1979). Quoting from his opinion (omitting citations):

. . . There is no bar to this court's review based upon the political question or the separation-of-powers doctrines. Those limitations on federal judicial review apply only where the court is faced with a challenge to action by a coordinate branch of the federal government. . . The case at bar involves a question of constitutional interpretation, an area peculiarly within the province of the federal courts, with regard to the actions of state legislators. . . .

Defendants further raise the question of immunity, on the basis of both the federal and New Jersey constitutional speech and debate clauses, as well as under common law. It is clear that the speech and debate clause immunity in Art. I, § 6, of the federal constitution has no application to the members of state legislatures. . . . Furthermore, Art. IV, § 4, ¶ 9, of the New Jersey Constitution, which tracks the federal speech and debate clause, cannot immunize a state legislator from liability for violation of federal constitutional rights made actionable by 42 U.S.C. § 1983. The Supremacy Clause, Art. VI of the United States Constitution, clearly mandates this conclusion. . . .

Finally, we must reject the suggestion that *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 . . . (1951), confers on defendants a common law immunity against an injunction. That case preserves state legislators' common law immunity only against liability for money damages based on their official or legislative acts. . . . In *Bond v. Floyd*, . . . the Supreme Court reached the merits of a state legislator's claim of first and fourteenth amendment deprivation at the hands of his fellow legislators without even discussing legislative immunity. Since all acts here were

well within the legislative process and functions, defendants enjoy an immunity against damage claims in this suit; but there is no immunity from the equitable relief sought in the instant application for a preliminary injunction.

■ I conclude, therefore, that none of the grounds which defendants advance to support their contention that this Court cannot or should not hear this case are valid. There is jurisdiction over the subject matter, since the cause of action arises under the federal Constitution, *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and is encompassed by the language of 28 U.S.C. § 1343(3), *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Davids v. Akers*, 549 F.2d 120 (9th Cir. 1977); *Kucinich v. Forbes*, 432 F.Supp. 1101 (N.D.Ohio 1977); *Ammond v. McGahn*, 390 F.Supp. 655 (D.N.J.1975), *rev'd on other grounds*, 532 F.2d 325 (3d Cir. 1976).

Consequently it is necessary to address the question whether the action of the majority of the New Jersey Senate terminating debate on Assembly Bills Nos. A–3677 and A–3678 and the existence of Senate rules which would permit termination of debate in the future impinge upon rights of the plaintiffs protected by the United States Constitution.

B. *The Merits:*

The New Jersey Constitution empowers the General Assembly and the Senate to "determine the rules of its proceedings". N.J.Const., Art. IV, Sec. IV, par. 3, and, conversely, "to suspend its own rules" when deemed necessary.

■ Acting pursuant to this power, the New Jersey Senate adopted the Rules which governed the 1980 Session. Plaintiffs contend that when debate on the tax bills was shut off on January 8, 1980 the Senate violated Rule 63, which limits to three the number of times a member of the Senate may speak on a bill unless the Senate grants leave to speak more often. My reading of the Senate Rules leads to the

conclusion that Rule 63 is a limit on debate, not a grant of a right to debate. I also conclude that Rules 93, 95 and 98 authorized the procedure which was followed and which resulted in the termination of debate. Thus the question is squarely presented whether a state legislature may in this manner limit or totally eliminate the right of a legislator to debate a pending bill without violating the Constitution of the United States.

Plaintiffs have not been able to refer the Court to any case which directs itself to this question. To support their attack upon the Senate Rules plaintiffs rely upon stirring, though very general, statements of venerated authorities on government and political philosophy, e. g., Thomas Jefferson, Montesquieu, Woodrow Wilson, Joseph Chamberlain and John Stuart Mills. These authorities are cited for the propositions that a republican form of government accords each citizen a voice in its direction through his elected representatives, that these representatives, in order to legislate properly, must weigh and consider with care the bills submitted to the legislature, and that free debate is essential to this process. While one might question whether debate on the floor of a legislature plays quite as decisive a role in the enactment of legislation as these eminent authorities anticipated, it cannot be denied that such debate often plays an important and instructive role in the legislative process.

However, I conclude that plaintiffs' invitation to the Court to issue an order guaranteeing each Senator the right to speak for or against any legislation before the Senate for a reasonable period of time prior to its being voted upon by the Senate is an invitation to leap into a quagmire from which the Court could never extricate itself. Literally thousands of bills are introduced into the New Jersey Assembly and Senate each year. If action on each of those bills, whether defeated or approved, could be questioned on the basis of whether each Assemblyman or each Senator had had a reasonable time to speak, the functioning of both the Legislature and of the Court could quickly be brought to a halt.

These practical considerations aside, I conclude that a state legislative body may limit or eliminate altogether debate on pending bills, provided such action is not taken for a constitutionally impermissible purpose. The business of a legislature is to legislate, and if, in order to act, debate must be limited or eliminated, the United States Constitution does not stand in the way. There is no case interpreting the First Amendment which would support plaintiffs' claim that their free speech rights were abridged because a majority of the Senate, performing its traditional and constitutionally assigned role of law-making, brought A–3677 to a vote so that the Senate could adopt it before the end of the legislative term. It has never been held that the body of Senators is prohibited by the First Amendment from regulating the manner of its legislative activities, particularly on the floor of the Senate. Plaintiffs remain free to express whatever views they hold on legislative proposals elsewhere, but on the floor of the Senate the wishes of the majority in limiting the extent of debate govern.

In *Davids v. Akers, supra,* the Court found that the First Amendment and Fourteenth Amendment rights of minority Democratic members of the Arizona House of Representatives were not violated simply because they were not appointed to standing legislative committees in proportion to their membership in the House. The Court stated:

We find nothing in the First or Fourteenth Amendments or in 42 U.S.C. § 1983 that can justify this attempt to inject the Federal Judiciary into the internal procedures of a House of a State legislature. The principle that such procedures are for the House itself to decide is as old as the British Parliament. It is embodied in the Constitution of the United States: 'Each House may determine the Rules of its Proceedings . . .' (Art. I, Sec. 5, cl. 2). It is embodied in the Constitution of Arizona: 'Each House to determine rules of its proceedings' (Art. IV, Sec. 8).

.     .     .     .     .

Plaintiffs' reliance on the First Amendment is misplaced. The only language in it that is even remotely related to their case protects 'the right of the people peaceably to assemble, and to petition the Government for a redress of grievances'. We are aware that the Court has given these words a very broad meaning. Nevertheless, we see nothing in the way in which the committees of the Arizona House are set up that interferes with the rights of the people of Arizona to assemble and petition. Were we among the Democratic members of that House, we might feel as much put upon—indeed, outraged—as plaintiffs do. But we would still be hard put to explain how (our) their First Amendment rights have been infringed.

549 F.2d at 123–124.

The Court in *Davids v. Akers* also recognized the special nature of a state legislature when it observed:

. . . . An individual citizen, voting for a candidate for public office, is in a very different position from an elected member of a legislative body, such as Arizona's House of Representatives. It is true that, like the elector, the member has one vote as a member of the House. Nothing in the record, however, suggests that his vote is different from that of each other member. He has no more right to have other members vote with him than an elector has to have other electors vote with him. Neither has a right to win. Each has a right to have his vote counted, with the same weight as every other vote. That, the member has.

*Id.*, 549 F.2d at 126.

The allegations of plaintiffs' complaint herein asserting a right to Senatorial debate must be viewed with the same caution properly exhibited by the Court in *Davids v. Akers, supra*; such a claim is no more substantial than that advanced in *Davids* seeking proportional representation on legislative committees based on party affiliation. Similarly, the constitutional rights of the non-Senator plaintiffs have not been denied, for their rights can rise no higher than those of the Senator plaintiffs. If the citizen plaintiffs object to the procedures employed in the Senate, their remedies lie in the political process and not in the courts.

Legislative bodies in this country have always been accorded the right to determine their own rules of proceedings. *N.J. Const.* (1947), Art. IV, § 4, ¶ 3; *N.J.Const.* (1844), Art. IV, § 4, ¶ 3; *U.S.Const.*, Art. I, § 5, cl. 2. The purpose of such rules is to provide for orderly and efficient procedures and thereby further the deliberative process; while such rules are intended in part to preserve minority rights, they cannot be construed at the expense of the majority to deny them the right to bring needed legislative proposals to a vote. *Senate Rules; Cushing's Manual.* Consequently, the procedures governing debate in legislative bodies have long recognized that a mechanism must exist to end needless debate when it is no longer helpful to the legislative body in arriving at a final determination on a bill's merits.

In the New Jersey Senate, the procedure for cutting off debate on a bill is the use of a motion for the previous question. *Senate Rule* 93(d). Similarly, Rule XVII of the United States House of Representatives provided, in pertinent part:

There shall be a motion for the previous question, which, being ordered by a majority of Members voting, if a quorum be present, shall have the effect to cut off all debate and bring the House to a direct vote upon the immediate question or questions on which it has been asked or ordered.

In the United States Senate, Rule XXII generally permits cloture upon a three-fifths vote of the full Senate membership; it is more restrictive than the procedures employed by the State Senate and the United States House of Representatives, but it likewise recognizes the authority of a majority of the legislative body to determine the extent of floor debate. The English Parliament placed a limitation on debate as early as 1604, and in 1882 the House of Commons permitted the Speaker to put the question when in his judgment the subject

had been fully debated. *Cushing's Manual* (1947), pp. 136–137; Smith, *History of the English Parliament,* Vol. II (1892), p. 592. In *Davids v. Akers, supra,* the Court recognized that from the earliest days of the English Parliament "the wishes of the majority are decisive". *Id.,* 549 F.2d at 123 n. 2.

Plaintiffs cite *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), for the proposition that a prohibition directed at speech is permissible under the First Amendment only when justified by a compelling state interest. That case, however, dealt with the rights of the individual generally; it did not deal with a legislator elected to a body which adopts its own rules of internal procedure in order to accomplish its primary purpose of legislating, a process which may call for restrictions upon debate.

The cases which plaintiffs cite in which a federal court has set aside acts of a state legislature are not in point. In those cases the legislative bodies did not limit debate in order to get on with their business; they expelled or disqualified members because of the content of their public utterances, clearly a deprivation of constitutional free speech rights, *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Kucinich v. Forbes, supra.* Thus it would be impermissible to limit debate for the purpose of penalizing a legislator for views expressed by him or in order to prevent members of one political party or one race from speaking. Nothing of that nature was done in this case and the Senate Rules were not adopted with any such purpose in mind.

### Conclusion

Consequently I find that on January 8, 1980 the New Jersey Senate Majority did not curtail debate for an impermissible reason, violating plaintiffs' rights under the United States Constitution, and I further find that the powers conferred by the Rules of the New Jersey Senate to limit debate do not violate the constitutional rights of the New Jersey Senators.

That being the case, plaintiffs' motion for summary judgment will be denied and defendants' motion for summary judgment will be granted. No costs will be allowed.