646 F.2d 848
 Barry T. PARKER, James S. Cafiero, Donald DiFrancesco, John
H. Dorsey, Wayne Dumont, Jr., John H. Ewing, Walter E.
Foran, S. Thomas Gagliano, Garrett W. Hagedorn, Brian T.
Kennedy, Lee B. Laskin, James J. Vreeland, Jr., James H.
Wallwork, members of the Senate of the State of New Jersey
and individually; and Ralph Fucetola, Clarence A. Haverly,
Richard Mahon, John Rice and Barbara Tauriello,
individually, Appellants,
v.
Joseph P. MERLINO, Eugene J. Bedell, John P. Caufield, Frank
J. Dodd, Bernard J. Dwyer, Angelo J. Errichetti, David J.
Friedland, Matthew Feldman, Frank X. Graves, John T.
Gregorio, William J. Hamilton, Francis X. Herbert, Joseph
Hirkala, Wynona A. Lipman, Joseph A. Maressa, William
Vincent Musto, Carmen A. Orechio, Stephen P. Perskie, Frank
E. Rodgers, Anthony Scardino, Jr., Walter N. Sheil, John M.
Skevin, Charles B. Yates and Raymond J. Zane, members of the
Senate of the State of New Jersey; and Senate of the State
of New Jersey and the State of New Jersey.
 No. 80-1947.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 1, 1980.
Decided April 24, 1981.
 
 John P. Sheridan, Jr. (argued), Princeton, N. J., for appellants.
 Leon J. Sokol (argued), Greenstone & Sokol, Hackensack, N. J., for appellees, Senators and the Senate of the State of New Jersey.
 Stephen Skillman, Asst. Atty. Gen. (argued), John J. Degnan, Atty. Gen. of New Jersey, Trenton, N. J., for appellee, State of New Jersey.
 Before ADAMS, GARTH and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 This is an action instituted by all thirteen Republican members of the New Jersey State Senate and certain of their constituents against most of the Democratic members of the Senate. Plaintiffs allege that their federal and state constitutional rights were infringed when, pursuant to the Rules of the Senate, debate on two bills pending before the Senate was cut off by the defendants. The district court granted defendants' motion for summary judgment and dismissed the action. 493 F.Supp. 381 (D.N.J.1980). We affirm.
 
 II.
 
 2
 The facts relevant to this controversy are the subject of a stipulation between the parties and hence are undisputed. Thirteen of the plaintiffs were members of the New Jersey State Senate during the 1979 legislative session, which ended on January 8, 1980 at 12 noon upon sine die adjournment of that body. The remaining plaintiffs are New Jersey residents; each resides in a legislative district represented by one of the plaintiff Senators. The twenty-four individual defendants were Democratic members of the New Jersey Senate during the same session; defendant Senator Joseph P. Merlino served as President of the New Jersey Senate. Also named as defendants are the Senate of the State of New Jersey and the State of New Jersey.
 
 
 3
 The controversy at issue here revolves around the passage of Assembly Bill 3677 (1979) and the attempted passage of Assembly Bill 3678 (1979) by the Senate on January 8, 1980. At the time in question, the Governor of New Jersey, was a Democrat and Democrats controlled both the New Jersey state Assembly and Senate. Because of a predicted $200 million budget shortfall for the New Jersey budget commencing July 1, 1980, the Governor announced a $340 million dollar tax plan on December 28, 1979. Included in the tax plan were the taxes embodied in Assembly Bills 3677 and 3678. A-3677 was a bill to increase the rate of the New Jersey corporate income tax by 1 1/2%.[1] A-3678 was a bill to amend the basis on which the State tax on motor fuels is calculated.[2]
 
 
 4
 A-3677 and A-3678 were introduced in the General Assembly on January 3, 1980 and placed on second reading no reference (not referred to Committee). On Saturday, January 5, 1980, the bills were given their third reading and passed the Assembly. Late that evening the bills were forwarded to the Senate where they were given second reading no reference, thereby placing them in a position to be voted upon by the Senate if listed on the Board List by the Senate President. That same day, the Senate President's office issued a Board List, circulated to all members of the Senate, which calendered A-3677 and A-3678 for a vote for the session scheduled to begin at 2:00 p. m., Monday, January 7, 1980.
 
 
 5
 At approximately 4:00 p. m. Monday, January 7, 1980, Senate President Merlino called the Senate to order. After considering 29 bills, the Senate was placed under "call" at approximately 9:00 p. m., with only A-3677 and A-3678 remaining to be considered. The Session was recessed upon motion adopted by voice vote over the objection of certain plaintiff Senators. At about 11:40 p. m. the Senate President called the Session to order and announced that A-3677 and A-3678 would be taken up at 10:00 a. m. the following morning, January 8, 1980.
 
 
 6
 The following day, the plaintiff Senators were present and ready to proceed with the Senate Session at 10:00 a. m. However, the Senate Democrats held a party caucus at 10:00 a. m. and Senate President Merlino did not call the session to order until approximately 11:27 a. m. This was 33 minutes before the constitutionally mandated end of the 1979 Senate Session. A brief colloquy between plaintiff Senator Hagedorn and defendant Senate President Merlino indicated that if the Senate Session were extended by the time-honored practice of setting back the clock, action taken after the actual hour of noon would be attacked on state constitutional grounds.[3]
 
 
 7
 After the quorum call, opening prayer and pledge of allegiance, Senator Dwyer (Democrat) was recognized by Senator Merlino. Then Senator Hagedorn, a Republican and the Minority Leader, rose on point of personal privilege to speak concerning what he claimed was the unreasonable manner in which the Governor's tax package, including A-3677 and A-3678, was handled by the Governor and the Legislature. Senator Merlino ruled Senator Hagedorn out of order and would not permit him to speak. Senator Hagedorn appealed this ruling, and the chair was sustained by a vote of 23-13.
 
 
 8
 At approximately 11:32 a. m. Senator Dwyer, the Democratic Majority Leader who had been previously recognized, spoke briefly in favor of A-3677 and moved the bill. Senator Hagedorn (Republican) then spoke in opposition to the bill for approximately five minutes. Senator Dwyer (Democrat) spoke in response and also responded to a question posed by another Republican Senator. After a brief comment in favor of the tax bills by Senator John Russo, a Democrat not named as a defendant in this action, plaintiff Senator Kennedy (Republican) spoke in opposition to the proposals and complained that as a member of the Revenue, Finance and Appropriations Committee he was not given an opportunity to review the validity of the request for a tax increase because the Committee had not met on the issue.
 
 
 9
 At approximately 11:47 a. m. defendant Senator Perskie (Democrat) moved the question. His motion was seconded by Senator Dwyer (Democrat). Senator Hagedorn (Republican) objected to the motion. President Merlino ruled the motion in order and non-debatable, citing Senate Rule 93(d).[4]
 
 
 10
 The Rules of the Senate in effect for the 1979 Senate Session were adopted by voice vote at the Senate Session on January 9, 1979. According to President Merlino's uncontested affidavit, twelve of the thirteen plaintiff Senators were present on the day the Rules were adopted.[5]
 
 
 11
 Senator Hagedorn (Republican) appealed the cloture ruling to the full Senate. Several Republicans who sought to speak were ruled out of order, over protests that this had been the first time debate was cut off in the Senate. The cloture motion carried 23 to 4.[6] All of the defendant Senators voted in favor of the motion. Plaintiff Senator Dumont then rose on a point of personal privilege, noting that in his twenty-six years in the Senate no Senator had ever been denied the right to speak on a bill. President Merlino ruled him out of order, saying the question had been called and must be followed by a vote on the bill. President Merlino then called the question and A-3677 passed 21-4.[7]
 
 
 12
 At about 11:53 a. m. the Secretary called A-3678. Defendant Senator Yates (Democrat) spoke in favor of A-3678 and moved the bill. Approximately 30 seconds later defendant Senator Friedland (Democrat) moved the question.[8] The cloture motion carried 16 to 9, with 16 of the defendant Democratic Senators voting in favor of the motion. President Merlino then called for a vote on A-3678. It was defeated at approximately 11:55 a. m.
 
 
 13
 In response to Republican protests over the procedure which had been followed, Defendant Senator Dwyer (Democrat) justified the actions on the ground of the imminent expiration of the legislative session.[9] Apparently, bills which do not pass both houses during a legislative session would have to be reintroduced and passed again in each house.[10] The 1979 Senate Session adjourned sine die at 12:00 noon. Later the same day, the Governor signed A-3677 into law as 1979 N.J.Sess.Law Serv., Ch. 280.
 
 III.
 
 14
 On January 18, 1980 plaintiffs filed their complaint in the United States District Court for the District of New Jersey. The complaint alleged that the actions of the defendants in voting to cut off debate infringed upon the plaintiff Senators' rights of free speech and association as guaranteed by the First and Fourteenth Amendments of the United States Constitution, comparable provisions of the New Jersey State Constitution, and 42 U.S.C. § 1983. The complaint also alleged that the defendants' actions had deprived the plaintiff Senators of their right effectively to represent their constituents and deprived the plaintiff constituents of their right to full and effective representation as guaranteed by the Fourteenth Amendment and Article IV, Section 4 of the United States Constitution, and various State Constitutional provisions. Jurisdiction was alleged to lie under 28 U.S.C. §§ 1331 and 1343(3).
 
 
 15
 By way of relief, plaintiffs sought: (1) a declaratory judgment that the actions of defendant Merlino and the other defendants in cutting off debate on A-3677 and A-3678 were unconstitutional; (2) a declaratory judgment that the Rules of the Senate are unconstitutional to the extent that they allow the Senate to prohibit any Senator the right to speak for or against legislation before the Senate for a reasonable time prior to it being voted upon by the Senate; (3) an injunction enjoining the defendants from acting in a manner that will deprive any plaintiff Senator of the right to speak for or against any legislation before the Senate for a reasonable period of time prior to it being voted upon by the Senate; and (4) a declaratory judgment that A-3677, now 1979 N.J.Laws, Ch. 280, is unconstitutional because of its manner of enactment.
 
 
 16
 Since the parties stipulated to all the pertinent facts and there was no dispute as to any material fact, the district court decided the case on cross-motions for summary judgment. The district court first ruled that it had subject matter jurisdiction and that the case was justiciable. Proceeding to the merits, the court concluded that the actions of the defendants in curtailing debate did not violate plaintiffs' constitutional rights and that the Rules of the Senate that permit a majority of Senators to cut off debate are constitutionally permissible. Accordingly, the court granted the defendants' motion for summary judgment. This appeal followed.
 
 IV.
 
 17
 As a preliminary matter, we address an issue alluded to by counsel for the Senate. At the oral argument, it was suggested that maintenance of this suit in the federal courts constitutes an attack on the sovereignty of the State of New Jersey and its independent legislative branch. We find that any suggestion that the federal courts are without jurisdiction to consider the complaint in this action is completely without merit. The complaint, brought under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, as well as under 28 U.S.C. § 1331, alleges a violation of plaintiffs' constitutional rights by the State of New Jersey, the New Jersey Senate, and its members acting under color of state law. We believe our jurisdiction to reach the merits is controlled by the action of the Supreme Court in Bond v. Floyd, 385 U.S. 116, 131, 87 S.Ct. 339, 347, 17 L.Ed.2d 235 (1966), where it held that it had jurisdiction to review whether the Georgia House of Representatives deprived one of its elected members of federal constitutional rights by refusing to seat him because of his public statements criticizing the Vietnam war policy. See also Davids v. Akers, 549 F.2d 120 (9th Cir. 1977). Thus, we turn to a consideration of the merits presented by the stipulated facts.[11]V.
 
 
 18
 In support of their position that Rule 93 is unconstitutional, plaintiffs rely on a number of cases which establish the principle that certain actions by a legislature that adversely affect a member violate the member's First Amendment rights. See Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); Kucinich v. Forbes, 432 F.Supp. 1101 (N.D.Ohio 1977); Ammond v. McGahn, 390 F.Supp. 655 (D.N.J.1975), rev'd on other grounds, 532 F.2d 325 (3d Cir. 1976). Cf. City of Madison Joint School District v. Wisconsin Employment Relations Commission, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976); Princeton Education Association v. Princeton Board of Education, 480 F.Supp. 962 (S.D.Ohio 1979). In Bond v. Floyd, supra, the Supreme Court held that the refusal of the Georgia House of Representatives to seat Julian Bond because of his public statements criticizing United States policy in the Vietnam war violated Bond's First Amendment rights. In Kucinich v. Forbes, supra, the district court held that the First Amendment prohibited a City Council from suspending one of its members for making allegedly defamatory remarks about the Council President. Another district court held in Ammond v. McGahn, supra, that a Democratic New Jersey State Senator could not be excluded from the State Democratic Caucus because of her public statements criticizing actions of some of the Caucus members.[12] Thus, in each instance the elected legislator was punished or restricted for making public statements that the majority found offensive.
 
 
 19
 In contrast, the Rule plaintiffs challenge here, which permits the majority of Senators to bring a question to a vote without further debate, is content-neutral. No Senator is punished or restricted because of the content of his or her speech; no Senator or block of Senators is singled out and denied the right to speak. We are not here dealing with a Rule that prohibits debate only by Democrats or blacks or women. Thus, plaintiffs' reliance on the cases cited is inappropriately placed. Indeed, in each case the court stressed that the legislature had acted in a non-neutral manner. For example, in Bond, supra, the Court stated that the "disqualification of Bond from membership in the Georgia House because of his statements" violated Bond's First Amendment rights. 385 U.S. at 137, 87 S.Ct. at 350 (emphasis added). Similarly in Kucinich, supra, the court found essential to its holding its factual finding that "plaintiff was punished for the idea content of his speech " 432 F.Supp. at 1112.
 
 
 20
 In addition to regulating speech in a content-neutral manner, the Senate Rules at issue here restrict a Senator's speech to only a minimal extent. They govern only the formal debate on the Senate floor during a regular session of the body immediately prior to a vote on some issue. The Rules merely require that once a question is called, it be voted on immediately, without the need for the body to wait until all Senators have "spoken their piece." The Rules do not impose a blanket ban on debate on all issues at all times, nor were they used in that manner.
 
 
 21
 The legislature has a significant interest in having Rules of Procedure which allow a question to be brought to a vote upon approval of a majority without further debate. Under the New Jersey Constitution, the Senate, composed of 40 Senators representing numerous constituents, together with the General Assembly, is vested with the legislative power of the State. N.J.Const. Art. 4, §§ 1, P 1, 2, P 1. Its primary function is to act as a decision-making representative body, expressing the will of the people. To this end, and pursuant to the power granted it in the New Jersey Constitution, N.J.Const. Art. 4, § 4, P 3, the Senate, like most deliberative bodies, has adopted rules of parliamentary procedure to enable it to discharge this function in an efficient manner. These rules govern a wide range of matters, ranging from the order of business to the order in which motions will be considered. The function of these rules is to maintain order by structuring the deliberative process and thereby allowing the legislature efficiently and effectively to perform its main function of making collective decisions on proposals before it. A rule permitting a question to be brought to a vote without further debate is just one of the many rules that serve this salutary function. It allows a majority of Senators, who in our representative system are deemed to express the will of the people, to enact needed legislation without the delay or potential frustration resulting from continued debate.[13] In fact, the Senate Rules at issue here were adopted by voice vote at the beginning of the 1979 Senate Session, indicating a general consensus that the Rules were necessary to the efficient functioning of the Senate.
 
 
 22
 The legislature's significant interest in maintaining rules that permit a vote on the previous question without further debate is borne out by history and practice elsewhere. Rule XVII of the United States House of Representatives provides for
 
 
 23
 motion for the previous question, which, being ordered by a majority of Members voting shall have the effect to cut off all debate and bring the House to a direct vote upon the immediate question
 
 
 24
 H.R.Doc.No.95-403, 95th Cong., 2d Sess. 508 (1978). This rule has been used as an instrument for closing off debate as far back as 1811.[14] Id. In the United States Senate, Rule XXII generally permits cloture upon a three-fifths vote of the full Senate, similarly recognizing the authority of the majority of a legislative body to determine the extent of floor debate. The English Parliament placed a limitation on debate as early as 1604, and in 1882 the House of Commons permitted the Speaker to put the question when in his judgment the subject had been fully debated. See Cushing's Manual of Parliamentary Practice-Rules of Procedure and Debate in Deliberative Assemblies 136-137 (1947); II Smith, History of the English Parliament 592 (1892), cited in 493 F.Supp. at 389-90.
 
 
 25
 Plaintiffs in effect concede that a rule cutting off debate may be reasonable in some circumstances. In essence, plaintiffs appear to be complaining about the application of the rule in this case, primarily because plaintiffs argue that there was almost two days following the passage of all other pending legislation during which there could have been full consideration of the two tax bills. Were we to adopt plaintiffs' position, we would be required to substitute our judgment as to the reasonableness of legislative conduct in this situation for that of the majority of the legislature. Defendants justify their actions in connection with these bills on the need for expedited consideration because of the imminent close of the legislative session. We do not believe we should substitute our judgment in this matter for that of the elected legislators of New Jersey. We would have to ignore the practice of generations of legislators who have enacted bills at the close of the legislative session were we to hold that the termination of a session may not justify some measures curtailing debate. Also, in this case there was the opportunity, although admittedly restricted, for the voicing of pro and con positions.
 
 
 26
 Plaintiffs also make a broader challenge to Rule 93. They posit the possibility that the Rule may be used to eliminate all debate on the floor of the legislature and that, combined with the possibility of closed committee hearings, it can be used to insulate all legislative deliberations from public view. In the same vein they posit the possibility of the majority imposing a Rule on the minority prohibiting all floor discussions. We need not address any possible constitutional infirmities in such a procedure or Rule. No such general rule has been adopted, nor was Rule 93 applied in such a manner. Therefore, consistent with our obligation to avoid unnecessary adjudication of constitutional issues, we confine ourselves to a consideration of the facts of this case.
 
 
 27
 Taking a somewhat different tack, plaintiffs also argue that if we refuse to require "reasonable" debate on all matters, we will deprive the constituent plaintiffs of their "right" to " 'full and effective' participation in the Senate which is accomplished by the vicarious actions of their representatives," as well as deprive the plaintiff Senators of their "right" to "fully and effectively represent (their) constituents." Appellants' Brief at 22, 26. To support this claim plaintiffs first rely on a number of statements by political philosophers regarding the benefits inuring to the legislative process from debate. Id. at 14-15, citing, e.g., Bailey, The Rationale of Political Representation (1835). Then, relying on one man-one vote cases, e.g., Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), for the proposition that courts are protective of the means by which one achieves "full and effective" representation in our "representative" government, plaintiffs argue that we must also be protective of the elements of the representative process, one of which, according to plaintiffs, is "reasonable" debate on all matters before our legislatures.[15] A similar argument was rejected in Davids v. Akers, 549 F.2d 120 (9th Cir. 1977). In that case, the Democratic minority members of the Arizona House of Representatives sued the Speaker of the House (a member of the Republican majority) alleging that the Speaker's failure to appoint Democrats to standing committees in proportion to their membership in the House violated their First and Fourteenth Amendment rights. The court rejected the plaintiffs' argument which also relied on the principle of Reynolds v. Sims that exclusion from committees makes a legislator a less effective representative in violation of the Constitution, since each legislator's vote was equally weighted and each retained ample opportunity to make his constituents' views known.
 
 
 28
 We also find nothing in Reynolds v. Sims to support the claims of plaintiff Senators in this case that the failure to allow them "reasonable" debate in all instances deprives them of their "right" to fully and effectively represent their constituents and deprives their constituents of full representation. The facts here do not present a basis for finding there was a constitutional violation as claimed, and we decline to go beyond the circumstances actually presented.
 
 
 29
 Accordingly, the district court's order is affirmed.
 
 
 
 [1]
 The Statement accompanying A-3677 explained:
 In 1976, as part of the tax reform package, several burdensome business taxes were repealed. At that time, a 1 1/2% increase in the corporation tax was planned, to begin in 1978, to compensate for lost revenues from those taxes and to enable the State to meet its expected obligations. This bill finally fulfills that plan.
 App. 53.
 
 
 [2]
 The Statement accompanying A-3678 explained that the bill "would change the tax from a per gallon base to a flat percentage base " App. 56
 
 
 [3]
 Plaintiff Senator Hagedorn asked Senate President Merlino what time it was. Merlino responded that the Senate clock was accurate
 
 
 [4]
 Rule 93 provides in part:
 When a question is before the Senate, no motion shall be received but
 a. to adjourn
 d. for the previous question.
 These motions shall have precedence in the order in which they stand arranged.
 Rule 95 provides that:
 The motion "for the previous question shall be decided without debate."
 No reference was made to Rule 63 which at that time provided:
 No member shall speak on any bill or resolution more than three times, or longer than thirty minutes the first time, or fifteen minutes the second time, and five minutes the third time without leave of the Senate.
 
 
 [5]
 On June 12, 1980 the Senate adopted new Rules for the 1980-81 Legislative Session. The following was added to Rule 63:
 No motion for the previous question shall be in order until at least one member each of the majority and minority parties, if they desire to be heard, have been permitted to speak on the question at least once.
 
 
 [6]
 Several plaintiff Republican Senators had left the floor to protest the Senate President's rulings
 
 
 [7]
 The Senate journal now indicates the final vote was 21-15
 
 
 [8]
 At that point, Senator John Russo (Democrat) rose on personal privilege but President Merlino ruled him out of order stating the motion to move the question was non-debatable. Senator Anthony Russo (also a Democrat) then attempted to speak but was not recognized. Neither John nor Anthony Russo was named as a defendant in this suit because neither voted with the majority to cut off debate on the tax bills
 
 
 [9]
 See Senate Rule 93 quoted in note 4 supra; N.J.Const. Art. 4, § 1, P 3
 
 
 [10]
 See N.J.Const. Art. 4, § 1, P 3
 
 
 [11]
 Other objections to our jurisdiction are also without merit. In the district court, defendants claimed that the case should be dismissed, arguing that as state legislators they were immune from suits brought under 42 U.S.C. § 1983. The district court refused to dismiss the suit on this ground holding that state legislators were immune only against liability for money damages. See In Re Grand Jury Proceedings (Cianfrani), 563 F.2d 577, 587 (3d Cir. 1977) (Gibbons, J., concurring); Gewertz v. Jackman, 467 F.Supp. 1047, 1056 (D.N.J.1979). But see Star Distributors, Ltd. v. Marino, 613 F.2d 4, 7 (2d Cir. 1980). Defendants do not raise this point on appeal
 Defendants also contended in the district court that the action was barred by the Tax Injunction Act of 1937, 28 U.S.C. § 1341 (1976), which provides:
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 Since plaintiffs request, inter alia, a declaratory judgment that A-3677 is unconstitutional due to the manner in which it was adopted, defendants characterize this suit as one to enjoin, suspend or restrain the assessment, levy and collection of New Jersey's increased corporate tax.
 The district court recognized that it was unclear whether the Act applies to actions for declaratory relief in a case such as this, see Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943); Garrett v. Bamford, 538 F.2d 63, 67 (3d Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), and whether New Jersey courts provided plaintiffs with an alternative "plain, speedy and efficient remedy" as is required by the Act. See Township of Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed.2d 358 (1946); Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371 (3d Cir. 1978). The court held that it need not decide the applicability of the Tax Injunction Act since even if it did not have jurisdiction to declare A-3677 unconstitutional the court would still have to address the plaintiffs' principal claim that the Senate Rules were unconstitutional.
 The State raises this issue on appeal as an alternative ground on which to defend its judgment. We are in substantial agreement with the district court's reasoning. Even assuming that the Tax Injunction Act deprives the district court of jurisdiction over so much of the complaint as requests a declaration that A-3677 is unconstitutional, an issue that is far from clear, it would not deprive the court of jurisdiction to address plaintiffs' principal claims. Thus, the district court properly proceeded to the merits.
 
 
 [12]
 In City of Madison Joint School District v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), the Court held unconstitutional a rule that precluded non-union teachers from speaking on the subject of pending collective bargaining negotiations at a school board meeting open to the public. Similarly, in Princeton Educ. Ass'n v. Princeton Bd. of Educ., 480 F.Supp. 962 (S.D.Ohio 1979), the court struck down a rule which prevented teachers from speaking at public meetings held by the school board regarding matters that could be pursued through a consultation or grievance procedure
 
 
 [13]
 In Kucinich v. Forbes, 432 F.Supp. 1001 (N.D.Ohio 1977), a case relied upon by plaintiffs, the court recognized that a local city councilman could be suspended from that body for failure to yield the floor, i.e., a refusal to stop speaking when told to do so by the council leader, because "society has a substantial interest in the efficient function of Council " 432 F.Supp. at 1114 n.18
 
 
 [14]
 For a discussion of the history of the previous question rule and examples of the many instances in which it was used to cut off debate, see V Hinds' Precedents of the House of Representatives §§ 5443-5520 (1907). Hinds states that the motion for the previous question is "of the greatest importance" and is "of very frequent use in the House of Representatives." Id. § 5443
 
 
 [15]
 Plaintiffs cite Article IV, § 4 of the United States Constitution which states that "(t)he United States shall guarantee to every State a Republican Form of Government " Plaintiffs can draw no support from this clause since it refers to Congress' obligations, not the courts', and therefore claims based upon it are not justiciable. See Baker v. Carr, 369 U.S. 186, 218-26, 82 S.Ct. 691, 710-15, 7 L.Ed.2d 663 (1962); Luther v. Borden, 48 U.S. 1, 12 L.Ed. 581 (1849)