FISHER, Circuit Judge,
dissenting.
The majority characterizes the jury’s finding of improper intent as the disposi-tive inquiry in assessing both the existence of a constitutional violation and entitlement to qualified immunity. This reflects, in my view, a fundamental misunderstanding of the relationship of motive to the First Amendment and the doctrine of qualified immunity. I respectfully dissent.
I.
Borne of judicial concerns over the deleterious effect of litigation on the work of public officials, qualified immunity protects those who overstep constitutional boundaries but nevertheless act in objective good faith. Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An official may not be held statutorily liable for a constitutional violation unless a reasonable person in the same position, with the same facts, would have understood that he or she was infringing on the individual’s civil rights. Id.
Inherent in this standard are two separate inquiries. The court must first determine, as a factual matter, whether the record demonstrates a constitutional infringement. Disputed issues of historical fact, if relevant to the substantive elements of the alleged deprivation, must be submitted to the jury for resolution. E.g., Curley v. Klem, 298 F.3d 271, 278 (3d Cir.2002). Only if a violation is established must the court determine, as a legal matter, whether a reasonable person would have recognized that violation. Resolution of this question depends upon the court’s application of the facts of the case to “clearly established” law. E.g., Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 194 n. 12 (3d Cir.2005).
A.
The leader of a legislative meeting, like a public employer or owner of a limited public forum, is constitutionally entitled to impose limitations on the expressive rights of participants in order to facilitate the legitimate goals of the gathering. Parker v. Merlino, 646 F.2d 848, 854 (3d Cir.1981); see also Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828-30, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); Brennan v. Norton, 350 F.3d 399, 412-13 (3d Cir.2003). Speech may be limited on the basis of time, place, and manner — and even content; however, it may not be restricted on the basis of viewpoint. Parker, 646 F.2d at 853-54; see also Rosenberger, 515 U.S. at 828-30, 115 S.Ct. 2510; Brennan, 350 F.3d at 412-13. So long as legislators comply with procedural rules and speak on topics within the scope of the meeting, they enjoy an absolute right to express their views without restraint and without fear of subsequent retaliation. A leader who prevents a member from speaking or punishes a member for prior speech based on his or her viewpoint has infringed on the member’s First Amendment rights. Parker, 646 F.2d at 853-54; see also Bond v. Floyd, 385 U.S. 116, 135-37, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); Velez v. Levy, 401 F.3d 75, 97-98 (2d Cir. 2005); DeGrassi v. City of Glendora, 207 F.3d 636, 645-46 (9th Cir.2000); Miller v. Town of Hull, 878 F.2d 523, 532-33 (1st Cir.1989). *408 But, even if retaliatory motive is established, the leader may yet escape liability by demonstrating that there is no causation between the improper intent and the restrictions on the legislator’s speech: i.e., that the legislator would have suffered the same restrictions in the absence of improper intent. Crawford-El v. Britton, 528 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (“[P]roof of an improper motive is not sufficient to establish a constitutional violation — there must also be evidence of causation.”). Proof that the same actions would have been taken regardless of the official’s intent cleaves the strand of causation between the constitutional violation and the harm, precluding success on the claim. See, e.g., Texas v. Lesage, 528 U.S. 18, 20-21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). No one would argue, for example, that an individual excluded from a public forum would have a basis for recovery if the decision to deny access was compelled by two independently operating regulations, one of which was viewpoint-biased and one of which was viewpoint-neutral. A restriction imposed as a result of improper intent will not give rise to liability if the same restriction would have been imposed otherwise. Mihos v. Swift, 358 F.3d 91, 105 (1st Cir.2004) (“[A] defendant might prevail ... in a case alleging an intent-based constitutional tort, without need to inquire as to her motives, if ... the defendant showed that she would have reached the same decision even in the absence of the employee’s protected speech.”) (citing Crawford-El, 523 U.S. at 592-93, 118 S.Ct. 1584).
The opinion of the majority does not address, and presumably rejects, this premise, which has been recognized in a series of Supreme Court decisions, including Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). It assumes instead that the jury’s finding of unconstitutional motive demonstrates, beyond cavil, the existence of a constitutional violation. It does not discuss whether, based on his repeated disruptions and noncompliance with procedural rules of the Council, Monteiro would have been ejected from the meeting even if Perkins-Auguste had not harbored an intent to punish him for his views.
Perhaps the majority’s reluctance to confront the issue stems from the District Court’s failure to instruct the jury on this point. Despite evidence that Perkins-Au-guste would have expelled Monteiro from the meeting regardless of his previously expressed opinions, the jury was not instructed on this aspect of causation analysis and never made a finding on the subject. Perkins-Auguste did not object to this omission during trial, and has not raised it on appeal, and we are thus constrained to assume that the jury was properly charged. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993) (noting that issues not raised on appeal are abandoned). Nevertheless, because causation constitutes an essential aspect of Monteiro’s claim, and because Perkins-Auguste argues the matter in her briefs, we must consider whether a finding of causation would have been supported by the evidence.
The issue presents a close question. Monteiro spoke out of turn during the meeting and repeatedly interjected comments during Perkins-Auguste’s speech.[5] *409 He did not comply with her rulings and refused to allow Perkins-Auguste to conclude her remarks uninterrupted. These circumstances suggest that Perkins-Au-guste, or indeed any legislative leader, would have taken the same actions regardless of an intent to retaliate against Mon-teiro.
However, because the burden of proof on this issue lies with Perkins-Auguste, see Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568, and the record does not compel a finding in her favor, I will assume that the jury could have reasonably found — if given the opportunity — that the same actions would not have been taken in the absence of improper intent. This conclusion, considered with the findings that Monteiro engaged in protected speech and that Perkins-Auguste acted with retaliatory intent in suppressing his speech, demonstrates that a constitutional violation occurred.
B.
The second stage of the qualified immunity analysis is whether, given the existence of a constitutional violation, a reasonable person should have recognized it under “clearly established” law. The hypothetical “reasonable person” is an objective observer, who is aware of the facts known to the official but possesses an independent knowledge of governing legal precepts. See Harlow, 457 U.S. at 806, 102 S.Ct. 2727. Only when these rules clearly forbid the actions taken by the official will immunity be denied. Anderson v. Creighton, 488 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
1.
Subjective intent plays a limited role in this analysis. It is considered as an element of the underlying claim when the right at issue is predicated on the official’s motive, but the presence of improper motive does not preclude qualified immunity. Grant v. City of Pittsburgh, 98 F.3d 116, 124 (3d Cir.1996). An official who has committed a constitutional violation, even one evincing improper intent, will nevertheless be immune from liability if an objective observer in the same position, given the same facts and knowing of the official’s improper motive, would not have recognized a constitutional violation under clearly established law. Mihos, 358 F.3d at 105 (“[A] defendant might prevail ... in a case alleging an intent-based constitutional tort, without need to inquire as to her motives, if ... the relevant law was not clearly established ....”) (citing Crawfordr-El, 523 U.S. at 592-93, 118 S.Ct. 1584).
The opinion of the majority holds to the contrary. It concludes that proof of a motive-based constitutional tort is itself sufficient to bar immunity, regardless of the clarity (or obscurity) of the violation under existing law. This position is summarized in a quote from the Court of Appeals for the Second Circuit, on which the majority relies: “[W]here ... specific intent is actually an element of the plaintiffs claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.” Locurto v. Safir, 264 F.3d 154, 169 (2d Cir.2001).
The flaw in this approach has been recognized by the Supreme Court: “[Proof of] unconstitutional motive [will not] automatically carry[ ] a plaintiff to trial ... [if there is] doubt as to the illegality of the defendant’s particular conduct....” *410 Crawford-El, 523 U.S. at 592-93, 118 S.Ct. 1584. An official may possess an unconstitutional motivation and yet be reasonably unaware of a constitutional violation. For example, an official who engages in a series of retaliatory maneuvers designed to punish an individual for prior speech may violate the individual’s civil rights — and indeed has acted with unconstitutional and malicious intent in doing so — but may not recognize the violation because governing law did not adequately explain that such maneuvers were so serious as to infringe on the individual’s rights. McKee v. Hart, 2006 WL 27474, at *5-7 (3d Cir. Jan.6, 2006).
Subjective intent may be considered in the immunity analysis when it forms an element of the constitutional violation, but, even in these cases, it must not be given dispositive weight. Crawford-El, 523 U.S. at 592-93, 118 S.Ct. 1584. The court must still determine whether a reasonable person in the same position would have recognized the infringement under “clearly established” law. Id.
2.
An infringement should be recognized by a reasonable person when it is fairly compelled by the facts of the case in light of relevant governing law. See Anderson, 483 U.S. at 640, 107 S.Ct. 3034. Existing jurisprudence must offer an adequate explanation of the right at issue and its application in circumstances similar to those faced by the official, such that an objective observer could conclude, without substantial equivocation, that a constitutional deprivation has occurred. In other words, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id.
The opinion of the majority defines the right at issue in this ease too broadly. It states that a public official in Perkins-Auguste’s position “must conform her conduct to the requirements of the First Amendment” and that “viewpoint-based restrictions violate the First Amendment.” These platitudes bear no relationship to the particular circumstances of this case and do little to define the standard governing Perkins-Auguste’s conduct. Anderson, 483 U.S. at 640, 107 S.Ct. 3034 (cautioning against defining the applicable legal rules at too high a “level of generality,” without consideration of the “particularized” circumstances of the case). The majority cites to no cases discussing whether and when a member of a legislative body may be removed from a public meeting.
This failure is understandable, given the dearth of precedent on the issue. Only one opinion of the Supreme Court has involved a claim of unconstitutional retaliation in the legislative context, see Bond, 385 U.S. at 135-37, 87 S.Ct. 339, and that case was resolved on other grounds, see id. at 137 & n. 14, 87 S.Ct. 339. Our own discussions on the subject have been cursory, see Larsen v. Senate of Pa., 154 F.3d 82, 94-95 (3d Cir.1998), and have not provided a clear archetype for analysis, see id.; see also Parker, 646 F.2d at 853-54. Opinions from other courts have offered similarly limited explanations of the circumstances under which a legislative leader may be held liable for expelling a member, without addressing Mt. Healthy or issues of causation. See, e.g., Velez, 401 F.3d at 97-98; Degrassi, 207 F.3d at 645-46; Miller, 878 F.2d at 532-33.
The lack of guidance is attested further by the District Court’s and the majority’s misunderstanding of the nature of the right to free expression. Neither the opinions of the District Court nor that of the majority acknowledges that an official may defeat a prima facie claim of a First *411 Amendment violation by proving that the same actions would have been taken absent the improper motive. This principle, clearly established by Mt. Healthy and Crawford-El, eluded the District Court and continues to elude my colleagues. A lay person could hardly be expected to understand the contours of this right when the matter has so confounded the federal judiciary.
Only one standard is plainly distillable from prior decisions, such that a reasonable person should have recognized it: a legislator may be disciplined or suspended from a public meeting if the action is reasonably consonant with the legitimate goals of the forum. See, e.g., Bond, 385 U.S. at 135-36, 87 S.Ct. 339; Parker, 646 F.2d at 853-55; see also Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568. This principle is not bound to a nuanced understanding of the doctrinal basis of a First Amendment claim or application of Mt. Healthy. It is based, instead, on the common sense notion that the Constitution does not prohibit expulsion of an unruly member whose obstreperous conduct prevents fulfillment of legislative duties.
3.
I cannot conclude, on this backdrop, that a reasonable official in Perkins-Auguste’s position should have realized that her conduct exceeded constitutional bounds. There is no doubt that Monteiro was being disruptive during the meeting and failed to comply with Perkins-Auguste’s rulings. He had interrupted other members of the Council prior to Perkins-Auguste’s speech and had been warned against such conduct. When Perkins-Auguste started speaking, Monteiro immediately interrupted once again. She ruled him out of order and threatened to remove him from the meeting. He nevertheless continued to speak. She asked the officers to remove him — not to arrest him — and yet he persisted. She agreed to his arrest only after it became evident that he would not leave voluntarily.
Monteiro’s repeated disruptions rendered continuation of the meeting difficult, if not impossible. He prevented other members from concluding their remarks and effectively blocked a final vote on the budget proposal. His conduct was, in short, antithetical to the legitimate goals of the forum. A reasonable official in the same position as Perkins-Auguste could have concluded, under existing caselaw, that the decision to remove Monteiro was constitutionally justified, regardless of her actual underlying intent. See, e.g., Bond, 385 U.S. at 135-36, 87 S.Ct. 339; Parker, 646 F.2d at 853-54; see also Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568. She is thus entitled to qualified immunity. See Anderson, 483 U.S. at 638-40, 107 S.Ct. 3034.
This conclusion does not cast doubt on the jury’s verdict, or its findings that Perkins-Auguste was motivated by a desire to retaliate against Monteiro and that a constitutional violation did occur. That an official is granted qualified immunity does not mean that he or she acted laudably or even constitutionally. To the contrary, an official may act in a morally and legally culpable fashion and yet be entitled to immunity if an objective observer, in the same position, would not have recognized a constitutional infringement. Crawfordr-El, 523 U.S. at 592-93, 118 S.Ct. 1584; Mihos, 358 F.3d at 105; see McKee, 2006 WL 27474, at *5-7. This legal determination does not vitiate or excuse the constitutional violation. It simply acknowledges that an official will not be held statutorily liable, under 42 U.S.C. § 1983, for a constitutional infringement of which a reasonable person would not have been aware.[6] See, *412 e.g., Cmwfordr-El, 523 U.S. at 592-93, 118 S.Ct. 1584; Harlow, 457 U.S. at 818-19, 102 S.Ct. 2727.
II.
The mantle of qualified immunity will be denied to a public official only when a reasonable person in the same situation would have recognized a constitutional infringement. Perkins-Auguste’s conduct, even if violative of Monteiro’s civil rights, was not so patently unconstitutional under existing caselaw as to deny her immunity.
The majority concludes to the contrary. It does so based on a fundamental misinterpretation of the relationship of subjective intent to the First Amendment and the doctrine of qualified immunity. This error will, I fear, have unfortunate ramifications for our jurisprudence in these fields. I respectfully dissent.

. I will not quibble with the majority opinion’s recitation of facts except to note that some of its characterizations of the record— particularly the charges that Perkins-Auguste "immediately leveled a pointed attack at Mon-teiro” and "changed the tone of the meeting *409 from a debate about the merits of the budget to a quasi-prosecutorial forum,” —are less historical than hyperbolical.

. The majority also suggests that Perkins-Au-guste forfeited the defense of qualified immu *412 nity by failing to file an interlocutory appeal from the District Court's denial of qualified immunity on summary judgment. ("After the jury returns a verdict, judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient evidence.”). This proposition is somewhat novel, and does not find support in decisions from our circuit or others. See Chan v. Wodnicki, 67 F.3d 137, 139 (7th Cir.1995) ("The trial has not made [the] claim of immunity moot, for while the immunity is from trial as well as from judgment, by the same token it is from judgment as well as from trial.”); Matherne v. Wilson, 851 F.2d 752, 756-59 (5th Cir.1988) ("There may be good reasons why a defendant may elect to not appeal [from the denial of qualified immunity] before trial, and we see little value in a rule of waiver that would force unwanted appeals, many of which undoubtedly never would have been necessary.”); see also Wilson v. City of Boston, 421 F.3d 45, 53-54 (1st Cir.2005); Sharrar v. Felsing, 128 F.3d 810, 830-31 (3d Cir.1997). At the very least, it is an open question, and one that need not be resolved in this case, as the parties apparently agree that the issue of qualified immunity has not been waived.